UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK A. ADKINS,

        Plaintiff,

v.                                                            Case No. 1:13-cv-848
                                                             Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on August 22, 1965 (AR 178).[1] He alleged a disability onset date of December 1, 2011(AR 178). Plaintiff has an associate's degree in informational technology and had previous employment as a technician in the Air Force (weapons system specialist), a mechanic and a production technician (AR 35-37, 183). Plaintiff identified his disabling conditions: cervical back pain; degenerative disc disease; elevated blood pressure; type 2 diabetes; and muscular calcification (AR 182). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 3, 2013 (AR15-24). This decision, which was

---

[1] Citations to the administrative record will be referenced as (AR "page #").

later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December

31, 2017 and that he had not engaged in substantial gainful activity since the alleged onset date of December 1, 2011 (AR 17). At the second step, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine with radicular symptoms; lumbar radiculopathy (status-post lumbar laminectomy in November 2004) and a decompression and fusion surgery in May 2007); left carpal tunnel release surgery in March 2010; diabetes mellitus; and depression (AR 17). At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 18). Specifically, plaintiff did not meet the requirements of Listings 1.02 (major joint dysfunction), 1.04 (disorders of the spine), 9.08 (diabetes mellitus) and 12.04 (affective disorders) (AR 18).

The ALJ decided at the fourth step that plaintiff:

> . . . has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) of the Regulations. Claimant is able to lift and carry a maximum of ten pounds. He can stand or walk for four hours and sit for about six hours during an eight-hour workday, with normal breaks. He is able to climb, stoop, kneel, crouch, and crawl occasionally and to balance frequently. He can perform limited overhead reaching and handling (gross manipulation). He must avoid concentrated vibration. Work is limited to simple, routine tasks with no fast-past [sic] jobs.

(AR 19). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary work in the national economy (AR 23-24). Specifically, plaintiff could perform the following work located in the State of Michigan: office helper (11,000 jobs); production inspector (1,800 jobs); and a receptionist/greeter (AR 23). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2011 (the alleged onset date) through May 3, 2013 (the date of the decision) (AR 23-24).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

### A. Did the Commissioner commit reversible error by failing to evaluate Listing 1.04.

Plaintiff contends that the ALJ erred by failing to provide an adequate analysis explaining why plaintiff did not meet or medically equal Listing 1.04. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Here, the ALJ found that plaintiff did not meet the requirements of any listed impairment "including sections 1.02 [major joint dysfunction], 1.04 [disorders of the spine], 9.08

5

[diabetes mellitus], and 12.04 [affective disorders]" (AR 18). While the ALJ addressed the requirements of plaintiff's alleged mental impairment under Listing 12.04, he did not address the requirements of the alleged physical impairments under Listings 1.02, 1.04 or 9.08 (AR 18-19). Plaintiff relies on the decision in *Reynolds v. Commissioner of Social Security*, 424 Fed. Appx. 411 (6th Cir. 2011) to support his claim. Plaintiff's Brief at p. 8.

In *Reynolds*, the Sixth Circuit held that an ALJ committed reversible error by failing to analyze the claimant's physical condition in relation to the Listed Impairments. *Reynolds*, 424 Fed. Appx. at 415-16. As in *Reynolds*, the ALJ in the present case addressed plaintiff's mental impairments under section 12.00, but did not address whether plaintiff met or equaled the various listings of physical impairments (i.e., Listings 1.02, 1.04 and 9.08), "despite his introduction concluding that they did not." *Reynolds*, 424 Fed. Appx. at 415. In *Reynolds*, the Court summarized the manner in which an ALJ should analyze a physical condition under the listed impairments (in that case a musculoskeletal disorder under Section 1.00):

> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir.1999); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir.2000). As the Third Circuit explained, "[b]ecause we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning" supporting the determination that [the claimant's] severe impairments do not meet or medically equal a listed impairment. *Burnett*, 220 F.3d at 120.

*Reynolds*, 424 Fed.Appx. at 416. Because the ALJ here did not provide any explanation as to why plaintiff did not meet Listings 1.02, 1.04 and 9.09, his decision is unreviewable as well.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). Since the ALJ has failed to articulate an analysis of Listings 1.02, 1.04 and 9.08 sufficient to allow a meaningful review, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should provide an explanation for the ALJ's determination that plaintiff did not meet the requirements of Listings 1.02, 1.04 and 9.08 .

> **B.    Did the Commissioner commit reversible error by failing to properly apply what is commonly referred to as the "Treating Physician Rule," pursuant to 20 C.F.R. § 404.1527(c)(2)?**

Plaintiff contends that the ALJ failed to give proper deference to the opinions of plaintiff's treating physician, Timothy Helder, M.D.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a

deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Helder prepared both a physical assessment (Exhibit 19F) and a mental assessment (Exhibit 18F) of plaintiff's ability to perform work-related activities (AR 522-24, 526). In the physical RFC dated February 20, 2013, the doctor listed diagnoses of cervical radiculitis and cervical spondylosis (AR 526). Notably, the doctor indicated that these conditions were "temporary" (AR 526). The doctor placed a single line through all of the listed activities on the

form, indicating that plaintiff could never perform them (i.e., sit, stand, walk, lift up to 10 pounds, lift up to 25 pounds, lift up to 50 pounds, lift over 50 pounds, bend or stoop) (AR 526). The doctor stated that plaintiff has been limited in these activities since at least December 1, 2011 (AR 526). In addition, the doctor answered six questions posed on the assessment which asked for his opinions on how plaintiff's symptoms would affect his ability to work 40 hours per week, 8 hours per day in a competitive work environment. The doctor responded "yes" to all of the questions: plaintiff would have serious limitations as to pace and concentration; plaintiff would need a sit-stand option as symptoms dictate; plaintiff would likely miss three days or more of work per month; plaintiff is best suited for part-time work as opposed to full-time work; plaintiff would need breaks from work as symptoms dictate; and the combined effects of these impairments on plaintiff's activities is greater than the effect of each impairment considered separately (AR 526). The form did not provide any place for the doctor to identify any medical findings, clinical notes or test results to support his conclusions, and he offered none (AR 526).

   Dr. Helder also completed an assessment of plaintiff's ability to do mental work-related activities on February 21, 2013 (AR 522-24). Notably, the assessment did not include any diagnosis. The doctor found that plaintiff had a limitation in every area of functioning he was asked to evaluate. The doctor did not find that plaintiff had any extreme limitations (i.e., "a degree of limitation that is incompatible with the ability to do any gainful activity") (AR 522-23). However, the doctor found that plaintiff had a number of marked limitations ("limitations that seriously, but not completely, interfere with the ability to function independently, appropriately and effectively on a sustained basis") in the following areas: follow work rules; deal with work stresses; and function independently (AR 522). Plaintiff had moderate limitations ("limitations that result in

9

satisfactory but limited function) in the following areas: relate to co-workers; deal with the public; interact with supervisors; use judgment; maintain attention/concentration; and understand, remember and carry out *any* job instructions (i.e., "complex job instructions", "detailed but not complex job instructions," and "simple job instructions" (AR 522-23). The only mild limitation ("limitations that do not significantly limit a person's ability to perform most jobs") was in maintaining his personal appearance (AR 523).

In evaluating plaintiff's functional limitations, Dr. Helder found that plaintiff had moderate limitations with activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace (AR 524). The doctor found that plaintiff had no episodes of decompensation (AR 524). The doctor found that plaintiff was limited in these activities since at least December 1, 2011, but declined to identify any medical findings, clinical notes or test results to support his conclusions (AR 524). The doctor commented that plaintiff was suffering from chronic pain from a spinal arthritis, that he was unable to sit or stand without constant repositioning, and that plaintiff's pain limits his functionality in concentration and physical ability (AR 524).

The ALJ addressed Dr. Helder's opinions as follows:

> As for the opinion evidence, the undersigned assigns very little weight to the February 2013 opinion statement of Timothy Helder, MD, in exhibit 19F. The statement contains no objective findings to support its proposed conclusions except for a diagnosis (cervical radiculitis and cervical spondylosis). No objective evidence would reasonably support a complete inability to sit, stand, walk, lift, or carry as the doctor has suggested. Exhibit 18F is also remarkable for an extremely brief treatment relationship between Dr. Helder and the claimant; there are apparently no other records from Dr. Helder to substantiate the proposed limitations. No statement in exhibit 19F suggests that the extreme physical limitations were based upon a functional capacity evaluation, or any other physical examination findings for that matter.
>
> The undersigned assigns almost no weight to Dr. Helder's statement concerning the claimant's ability to perform basic mental work activities in exhibit

> 18F.  The conclusion that the claimant has a "severe" depression at the second step of the sequential evaluation is generous in view of the complete lack of corresponding treatment.  Moreover, no evidence, including Dr. Helder's statements, suggests that this physician or any other physician, psychiatrist, or psychologist has treated the claimant for any mental impairment.

(AR 22).[2]

The ALJ's brief discussion of Dr. Helder's opinions does not give good reasons for the weight assigned to the opinion of a treating physician as contemplated by the regulations.  *See Wilson*, 378 F.3d at 545.  However,  "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."  *Id.* at 546-47  As the party attacking the agency's determination, plaintiff has the burden of establishing that the error was harmful.  *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).  Plaintiff has not met that burden in this case.

Despite having generated numerous treatment notes related to plaintiff (AR 586-671) (Exhibit  23F), Dr. Helder declined to refer to the notes as objective evidence to support either of his assessments.[3]  It is not for this Court to speculate as to which (if any) of these treatment notes the doctor used to prepare his assessments.  His physical RFC is so extreme that a person would be unable to perform any activity.  However, the ALJ noted that plaintiff  "has a consistent work record through the year of 2011," that "[m]any of his impairments pre-date the alleged onset date and were

---

[2] The Court notes that it is unclear when Dr. Helder first treated plaintiff. Dr. Helder stated on the form that he first treated plaintiff more than two years later on December 7, 2013, and last treated him on February 20, [unintelligible] (AR 524).  Clearly, there is an error in these statements, because the doctor evaluated plaintiff on February 20th and 21st, 2013 (AR 522-24, 526).

[3] In his brief, plaintiff suggests that Exhibits 14 and 15 (AR 488-507) are further evidence of Dr. Helder's involvement.  *See* Plaintiff's Brief at p. 14.  The Court notes that these records reflect examinations and testing performed by Kent Neurological Associates, P.C., and neurologist Vicente C. Gracias, M.D. While the results were sent to Dr. Helder, he did not generate these records.

present during years in which the claimant performed substantial and gainful work," and that plaintiff participates on a regular basis with a charitable organization for the homeless:

> At hearing, claimant testified that his 19-year old son lives with him. Claimant stated that, since March 2012, he has volunteered for a non-profit organization to organize a golf outing in order to raise funds for the homeless. He said that this volunteer activity is for a couple of hours up to three days per week. Claimant testified further that, although neck surgery has been recommended, it his understanding that, this treatment option is a last resort. He stated that the use of pain medications help make his pain level tolerable to a point.

(AR 21). The mental assessment does not include a diagnosis, yet finds that plaintiff is moderately or markedly limited in all areas of functioning except one. Based on this record, the ALJ's failure to provide good reasons for the weight assigned to Dr. Helder's was harmless error which did not prejudice plaintiff. Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should provide an explanation for the ALJ's determination that plaintiff did not meet the requirements of Listings 1.02, 1.04 and 9.08. A judgment consistent with this Opinion will be issued forthwith.


Dated: September 24, 2014          /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge